OPINION
{¶ 1} Defendant-appellant, Kenneth L. Collier, appeals from a judgment of the Franklin County Court of Common Pleas denying his application for DNA testing pursuant to R.C. 2953.71 et seq. Defendant assigns a single error:
The trial court erred in dismissing Mr. Collier's application for DNA testing because the State did not conduct a search for remaining biological material with the "reasonable diligence" required by R.C. 2953.75.
Because the state did not use "reasonable diligence" in searching for the requested biological material in the laboratory, property room, and hospital, we reverse.
 {¶ 2} In July 1982, defendant was found guilty, pursuant to a jury verdict, of three counts of rape, six counts of robbery, one count of burglary, one count of kidnapping, two counts of receiving stolen property, and one count of carrying a concealed weapon. The trial court sentenced defendant accordingly and ordered the sentences be served consecutively.
 {¶ 3} On October 29, 2004, defendant filed an application for DNA testing. The state filed a memorandum in opposition and submitted two "request for laboratory examination" forms and a statement of facts from the original trial. The request forms revealed that multiple swabs and slides were collected from the rape victims and sent to the Columbus Police Crime Laboratory. In its memorandum, the state maintained that the biological evidence collected from the rape victims no longer existed. The state further contended that even if the biological evidence existed, results favorable to defendant would not determine the outcome of the rape offenses. The trial court found the state did not include sufficient documentation to support its contention that the requested biological evidence no longer existed. The trial court thus ordered the state to conduct its investigation with "reasonable diligence" and to demonstrate the requested evidence was destroyed.
 {¶ 4} The state filed a supplemental response with an attached affidavit describing the state's search for the requested biological evidence, a property release form, a property update form, and a copy of the front cover from defendant's case file. According to the affidavit, an assistant prosecuting attorney ("APA") found documents in the Franklin County prosecutor's office revealing that "swabs were taken from the [rape] victim and slides were made from those swabs." (Affidavit, ¶ 3.) When the APA determined the biological evidence was examined at the Columbus Police Crime Laboratory, she contacted the laboratory and "was informed the Lab does not have the capacity to retain biological evidence after testing is completed and that the policy of the Lab is to return property to the Prosecutor's Office." (Affidavit, ¶ 5.) She also contacted the Columbus Police Property Room and "was informed that the Columbus Police Property Room does not retain biological evidence once the case is set for trial and that the evidence collected by the officer or officers investigating a crime is released to the Franklin County Prosecutor's Office for prosecution of the case." (Affidavit, ¶ 6.) The APA then contacted a Franklin County Prosecutor's Property Room employee and "was informed by [him] that there is no evidence pertaining to this case in the property room of the Franklin County Prosecutor." (Affidavit, ¶ 7.)
 {¶ 5} Although the front cover of defendant's file did not provide any information relevant to the state's investigation, the property release form revealed that on November 19, 1993, the prosecutor's office possessed a sack and swabs from defendant's original case. The property update form requested authorization to destroy the property by November 30, 1993; the request apparently was authorized on December 1, 1993.
 {¶ 6} The trial court determined the state's supplemental response, with the attached documentation, demonstrated the state conducted its investigation with "reasonable diligence." Based on the investigation, the court concluded the requested biological evidence was destroyed, and the court thus denied defendant's application for DNA testing.
 {¶ 7} Defendant's sole assignment of error contends the trial court erroneously dismissed his DNA testing application before the state conducted a reasonably diligent investigation to determine whether the requested biological material still exists. Defendant claims a lack of "reasonable diligence" is reflected in the state's failure to supply a relevant chain of custody for the biological evidence, to physically search for biological evidence in all possible locations, and to demonstrate that all biological evidence was destroyed.
 {¶ 8} Defendant first argues the state did not conduct a reasonably diligent investigation because it neither provided a chain of custody for the biological evidence nor physically searched for the biological evidence. Although the state notes both the laboratory and property room had a "policy" of forwarding biological evidence to the prosecutor's office, defendant contends an existing policy does not prove compliance with the policy. Defendant thus asserts the noted policies do not allow the trial court to conclude the requested evidence was forwarded to the prosecutor's office and is no longer within the confines of the laboratory or property room. Rather, defendant contends that, absent documentary proof, the state must meaningfully search for the requested biological evidence and report its findings.
 {¶ 9} R.C. 2953.71 et. seq. governs post-conviction DNA testing for eligible inmates whose DNA evidence was not, or could not be tested in the original felony trial. R.C. 2953.72. If an eligible inmate submits a DNA testing application, the trial court "shall require the prosecuting attorney to use reasonable diligence to determine whether biological material was collected from the crime scene or victim * * * and whether the parent sample of that biological material still exists at that point in time." R.C. 2953.75(A). In making the required determinations, the prosecuting attorney must exercise "a degree of diligence that is comparable to the diligence a reasonable person would employ in searching for information regarding an important matter in the person's own life." R.C. 2953.71(Q). R.C. 2953.75(B) requires the prosecuting attorney to file a report containing the determinations. If the court concludes that the requested biological evidence no longer exists, it may not accept the application. R.C. 2953.74(C)(1).
 {¶ 10} Here, the APA's affidavit is premised too heavily on assumption to meet the test of reasonable diligence set forth in R.C. 2953.71(Q). The APA stated the laboratory "does not have the capacity to retain biological material" and the laboratory's "policy" is to return property to the prosecutor's office after testing is complete. (Affidavit, ¶ 5.) Similarly, the APA stated the property room "does not retain biological evidence once the case is set for trial," and "evidence collected * * * is released to the Franklin County Prosecutor's Office." (Affidavit, ¶ 6.) Whether inartfully or purposefully so drafted, the APA's affidavit does not affirmatively state the laboratory and property room do not possess the requested biological evidence. Nor does the APA aver that she or her agent conducted any search of the lab and property room or its contents.
 {¶ 11} A reasonable person would not conclusively accept an agency's policy or procedure when "searching for information regarding an important matter in the person's life." While the laboratory or property room policy may be a starting point, reasonable diligence required the APA to determine whether the lab and property room actually forwarded the requested biological evidence to the prosecutor's office. Absent evidence the material was forwarded to the prosecutor's office, the APA's burden of reasonable diligence required the APA to determine whether the requested evidence remains in the laboratory or property room. Because the APA unreasonably relied on the policies of the laboratory and property room, she did not meet the test of reasonable diligence.
 {¶ 12} Nor do the property release and update forms from the prosecutor's office rectify the APA's lack of reasonable diligence, as they verify only some of the APA's assumptions. More specifically, the documents indicate that multiple swabs and slides were collected from the rape victims in defendant's original case. The prosecutor's property release form lists only a "sack and swabs" in its possession. It does not mention the slides. While the property update form reflects authorization to destroy the property in the prosecutor's possession, presumably the "sack and swabs" referred to in the property release form, the authorization carries the deficiencies in the property release form into the update form. The information the state provided thus did not allow the court to ascertain that the prosecutor's office possessed all the biological material collected from the rape victims before it authorized the destruction of the property in its possession.
 {¶ 13} Defendant also argues that the state did not conduct a reasonably diligent investigation because the prosecuting attorney did not contact or search the hospital responsible for collecting the biological material from the rape victims. Defendant contends that, absent evidence of a chain of custody, the hospital still may possess the requested biological evidence.
 {¶ 14} R.C. 2953.75(A) requires the prosecuting attorney to investigate with reasonable diligence all relevant sources including (1) all prosecuting authorities from the original case, (2) all law enforcement authorities involved in the original investigation, (3) all custodial authorities involved at any time with the biological material, (4) the custodian of all agencies, (5) all crime laboratories involved at any time with the biological material, and (6) all other reasonable resources. Pursuant to R.C. 2953.75(A)(3), the state must contact the hospital that originally collected the biological material to determine whether the evidence still exists.
 {¶ 15} Here, the APA began her investigation with a document from the Columbus Police Department that requested its crime laboratory examine the swabs and slides collected from the rape victims. The APA's affidavit did not mention which hospital took the swabs, did not provide a chain of custody from the hospital to the police, and did not disclose her attempt to ascertain such information. Although we note that one of several hospitals could have collected swabs from the rape victims, the state is in the best position to know which hospitals were involved in the examinations. Moreover, requiring the state to contact the hospital or hospitals which could have collected the swabs from the victim's herein does not subject the state to a higher standard than contemplated in R.C. 2953.75(A). Given the sparse information the APA provided, we are compelled to conclude that the local hospitals cannot be excluded as a source for the requested evidence, as at least one hospital once possessed the requested biological evidence. Absent information indicating the hospital or hospitals forwarded the evidence to the prosecutor, the information the APA submitted does not meet the reasonable diligence standard.
 {¶ 16} Finally, defendant claims the state did not conduct a reasonably diligent investigation because it did not demonstrate that the biological evidence was destroyed. Defendant contends the property forms only request and authorize the destruction of the evidence in the prosecutor's possession but do not demonstrate that the requested biological evidence actually was destroyed. Defendant asserts that without something to show the evidence was destroyed, the state's investigation lacks "reasonable diligence." While the state's supporting documentation does not demonstrate that the requested biological evidence was destroyed, the APA affirmatively stated "that there is no evidence pertaining to this case in the property room of the Franklin County Prosecutor." (Affidavit, ¶ 7.) If, after employing reasonable diligence in determining whether the evidence is in the lab, property room, and hospital, the APA determines that those locations do not possess the requested biological evidence, the APA will have exercised reasonable diligence supporting her contention that the evidence no longer exists.
 {¶ 17} Alternatively, the state argues that, even if the APA's search was not reasonably diligent, defendant is not entitled to post-conviction DNA testing because (1) an exclusion result from the DNA testing will not be outcome determinative, and (2) defendant's identity was not at issue in the original trial.
 {¶ 18} R.C. 2953.74(B) and (C)(1) direct that a trial court not accept a post-conviction DNA testing application if an exclusion result will not be outcome determinative. An "exclusion result" is an outcome of DNA testing that scientifically precludes or forecloses the applicant from being the contributor of the biological material recovered from the crime scene or crime victim. R.C. 2953.71(G). Similarly, R.C. 2953.74(C)(3) directs that a trial court not accept a DNA testing application if the identity of the person who committed the offense was not at issue in the original trial.
 {¶ 19} Relying on the similarities between the incident accounts the two rape victims gave, their descriptions of defendant, affirmative photograph identifications, defendant's possession of stolen property from a rape victim, and various other circumstantial evidence, the state contends the evidence is sufficient to convict defendant of the rape offenses even if the DNA testing definitively excludes defendant as the contributor of the semen obtained from the victims. The state also contends defendant's identity was not a contested issue; instead, the state asserts, defendant's trial strategy focused almost exclusively on excuse and only superficially on the witnesses' identifying defendant to be the perpetrator.
 {¶ 20} Although the state's evidence was sufficient to convict defendant of rape at the time of defendant's trial, DNA analysis now provides the courts with a more precise means of reaching a correct and just result. Here, the state's investigation reveals that semen was collected from the rape victims. Although the record does not suggest another source of the semen, such as prior consensual sexual activity or multiple rapists, a DNA testing result that conclusively determines defendant was not the source of the semen would present a substantial impediment to the state's ability to prevail on the rape charges, if nothing else.
 {¶ 21} Moreover, contrary to the state's contentions, defendant's trial strategy contested identity. The record reveals defendant cross-examined one of the rape victims regarding her ability to identify defendant as the rapist. Defendant also questioned corroborating eyewitnesses about their identifying defendant as the perpetrator of the connected robberies. While defendant's identification was not the primary focus of the trial, defendant sufficiently put his identification at issue to withstand the trial court's denying DNA testing under R.C.2953.74(C)(3).
 {¶ 22} Accordingly, we sustain defendant's assignment of error, reverse the judgment of the trial court, and remand for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
Sadler and French, JJ., concur.